HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| K. T.,<br><br>                Plaintiff,<br><br>    v.<br><br>NORTH KITSAP SCHOOL DISTRICT,<br><br>                Defendant. | CASE NO. C13-5685 RBL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.  INTRODUCTION

THIS MATTER is before the Court on Plaintiff's Motion for Partial Summary Judgment [Dkt. #20]. K.T. is a former North Kitsap School District student. She claims that her science teacher, William Thompson, groomed her on school grounds and then made sexual advances. [Dkt. #16 at ¶ 5]. K.T. sued North Kitsap School District for violating Title IX (20 U.S.C. § 1681(a)) and for negligence. She claims it was on notice of Thompson's sexual misconduct toward female students and failed to adequately respond, and was negligent in retaining Thompson after being notified of his improper behavior, in failing to properly supervise Thompson, and in failing to protect K.T. and other female students from his advances.

The District asserts seven affirmative defenses relating to fault, misconduct of others, mitigation, intervening, superseding cause, and failure to join a necessary party. [Dkt. #6 at 7-8].

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

K.T. seeks summary judgment dismissing five of these defenses. The District concedes that most of these challenged defenses do not apply, and those affirmative defenses are DISMISSED.[1] The District opposes dismissal of the intervening, superseding cause defense, claiming a jury could determine that K.T.'s other "life events" were intervening events that caused her damages. Because these events are the not independent acts of a third person, but are instead a claim that the District did not cause K.T.'s damages, K.T.'s motion is GRANTED.

## II.   BACKGROUND

K.T. alleges that North Kitsap School District teacher William Thompson groomed her and made sexual advances toward her when she was a ninth grade student in his science class at Poulsbo Junior High School. [Dkt. #20 at 2]. She claims the District knew Thompson posed a serious threat to students because he previously engaged in the same conduct with another student, A.F., six years earlier. [Dkt. #1 at ¶ 7].

A.F. reported the molestation and the District conducted an investigation. [Dkt. #20 at 2]. Human Resources Director Lani Powell interviewed A.F., who reported that Thompson had started assisting her with math homework and would ask her to remain after class. Later he began asking her to come to his classroom after school. Thompson would close the door to his room and over time spoke to her more intimately. He then became more physically intimate with her, starting with tying her shoes, then tying her gym shorts, and then kissing her and embracing her. Thompson denied the allegations. The District concluded that although A.F. was a very credible witness with no motive to fabricate the events alleged, because it was her word against Thompson's, no disciplinary action was appropriate. [Dkt. #1 at 3]. Thompson was not

---

[1] These Affirmative Defenses are: comparative fault (Affirmative Defense No. 1); third-party fault (Affirmative Defense No. 2); mitigation of damages (Affirmative Defense No. 4); failure to join a necessary party (Affirmative Defense No. 6).

terminated after the investigation, nor reported to the Office of Superintendent of Public Instruction (OSPI).  Instead, Superintendent Dr. Medina sent Thompson a "letter of direction" which required Thompson to remove the coverings on the window between his classroom and planning room, cautioned him to be careful, and directed him to attend boundary invasion training.  The District asserts that Principal Tony Bainbridge conducted daily "walk-bys" of Thompson's room between January 2003 and the end of the 2004-2005 school year.

K.T. alleges that Thompson engaged in sexual grooming and made sexual advances toward her when she was his student in the fall of 2006.  At that time, no one was monitoring Thompson, even in his classroom after hours.  Thompson began tutoring K.T. after school and began to groom her.  He would take K.T. into his planning room, close the blinds and the door, and make sexual advances toward her, including hugging, touching, and kissing.  [Dkt. #22 at 12].  The grooming and misconduct continued for about six weeks.  K.T. began to feel ashamed and that her contacts with Thompson were inappropriate, disturbing, and uncomfortable.  She decided she should not be alone with Thompson again.  After winter break, she stopped going to tutoring sessions.  Thompson continued to pursue K.T., however, calling her out of class and to his classroom, asking her why she was not stopping by after school.  Thompson told K.T. that he missed her, that he was disappointed, and that he wanted to "teach [her] how to love."  [Dkt. #22 at 12].

K.T. alleges that Thompson's sexual misconduct caused her to develop anorexia and depression, and led to hospitalization at Children's Hospital twice from January to February 2007 and again in March for a 76 day in-patient stay. [Dkt. #1 at ¶ 22].  She also claims Thompson approached her in May 2008 and told her he missed their relationship.  This worsened her eating disorder and depression and required a re-admittance to Children's Hospital.  K.T. asserts that

her injuries have required extensive hospitalization, therapy, and treatment, and will continue into the future.

K.T. seeks dismissal of the intervening, superseding cause defense, arguing that the District has not identified an intervening act of a third-party that broke the chain of causation between the District's conduct and K.T.'s injuries. The District opposes dismissal, arguing that a jury could determine that K.T.'s other "life events" are intervening causes of her damages. K.T. responds that these life events are not the unforeseen acts of a third-party, and therefore are not intervening, superseding causes as a matter of law.

### III.   DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine

issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

### B. Intervening, Superseding Cause Defense

Affirmative defenses deny the plaintiff's right to recover, even if the complaint's allegations are true. *See Federal Deposit Ins. Corp. v. Main Hurdman*, 655 F.Supp. 259, 262 (E.D. Cal. 1987). The District bears the burden of establishing each of its affirmative defenses. *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981) ("the burden is always on the party advancing an affirmative defense to establish its validity.").

A defendant's negligence is a proximate cause of a plaintiff's injury "only if such negligence, unbroken by any new independent cause produces the injury complained of. When an independent intervening act of a third person is one which was not reasonably foreseeable then there is a break in the causal connection between the defendant's negligence and the plaintiff's injury." *Schooley v. Pinch's Deli Market, Inc.*, 134 Wash.2d 468, 482, 951 P.2d 749 (1998) (internal citations omitted). However, "[t]here may be more than one proximate cause of an injury." WPI 15.01.01. A defense "which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

The District opposes dismissal of its intervening, superseding cause defense. The District argues that the jury should be allowed to consider "whether or not the life events occurring after K.T.'s alleged abuse constitute an intervening cause breaking the chain of causation between the alleged abuse and any of K.T.'s alleged damages." [Dkt. #23 at 8]. These events include K.T.'s eating disorder intensifying at the start of every track season, K.T. stopping her medication, K.T. feeling unsupported by her parents, bad family dynamics, and K.T.'s father's death. [Dkt. #23 at 8].

The "life events" that the District cites are not the independent acts of a third person, nor the byproduct of a second incident or act that occurred after the alleged misconduct by Thompson. These events are more properly argued as a defense to proximate cause, rather than as an intervening, superseding cause. K.T.'s Motion for Summary Judgment on the District's Affirmative Defense No. 5 is GRANTED, and that affirmative defense is DISMISSED.

IT IS SO ORDERED.

Dated this 16th day of January, 2015.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE